# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR418-153 |
| | ) | |
| FRANK H. BYNES, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are defendant's First and Second Motions in Limine, docs. 123 & 124, and the Government's Motion in Limine, doc. 125. The Government opposes defendant's motions. Doc. 133. The Government's motion stands unopposed.

## BACKGROUND

Defendant was indicted in a 48-count indictment in June of 2018. Doc. 3. Counts 1-39 were for unlawful dispensation of controlled substances in violation of 21 U.S.C. § 841(a)(1) and counts 40-48 were for health care fraud in violation of 18 U.S.C. § 1347. *Id.* An initial appearance was held on June 21, 2018, and he was arraigned on June 27, 2018. Doc. 8, doc. 27. Discovery commenced and defendant requested that the Court approve an expenditure for an expert on October 31, 2018 and November 28, 2018. Docs. 54 & 56. The Court

granted that motion on December 3. Doc. 57. However, the case did not proceed to trial as a superseding indictment was filed on April 3, 2019, reducing the number of counts to 17. Doc. 71. As with his initial indictment, the charges are divided into two types; counts 1-14 are for unlawful dispensation of controlled substances in violation of 21 U.S.C. § 841(a)(1) and counts 15-17 are for health care fraud in violation of 18 U.S.C. § 1347. *Id.*

## ANALYSIS

### I. Defendant's First Motion *in Limine*

Defendant first requests that the Government be precluded from eliciting testimony about the alleged opioid epidemic/crisis in the United States and abroad and that the alleged conduct of defendant contributed to the epidemic. Doc. 123 at 2. He also requests that the Court instruct the jury that it cannot consider extraneous, wide-spread public outcries and concerns over the illicit and illegal use of opioids. *Id.* He argues that such evidence would be extraordinarily prejudicial to the defendant under Fed. R. Evid. 403.

Fed. R. Evid. 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger

of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As the Court of Appeals for the Eleventh Circuit has noted,

> "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged[, such as] an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180, (1997) (quotations and citations omitted). However, exclusion of evidence under "Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility." *United States v. Edouard*, 485 F.3d 1324, 1344 n.8 (11th Cir. 2007) (quotations and citations omitted).

*United States v. Holland*, 2019 WL 2560019, at *21 (N.D. Ga. June 21, 2019). However "[e]vidence not part of the crime charged but pertaining to the chain of events explaining the context is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime to complete the story of the crime for the jury." *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004) (alterations, quotations and citations omitted).

The first question is whether references to the opioid epidemic are relevant. Defendant is concerned that the Government will refer to the epidemic as "a motive for the charges alleged in the indictment." Doc. 123 at 2. The Government volunteers that, on the contrary, it "has no intention of eliciting testimony or arguing to the jury that Bynes should be convicted because he contributed to the nationwide opioid epidemic," doc. 133 at 2, and less emphatically that it "does not anticipate arguing or introducing evidence during trial that the actions of Dr. Bynes 'contributed' to the epidemic," *id.* at 3 n. 1. To the extent that the Government intends to refer to the epidemic, it intends to introduce "warnings, education letters, and guidance" which refer to the epidemic as motivation for their creation or dissemination. *Id.* It also discloses that "testifying medical professionals" may refer to the epidemic as an influence on the relevant standard of care. *Id.* at 2-3.

Evidence of the opioid epidemic is, therefore, relevant to this case, as it provides context to the prosecution. However, there is no question that it is only tangentially relevant; the Government's own arguments identify, at most, its contextual value. So, the Court must determine whether the prejudicial effect outweighs the probative value. Evidence

4

of a currently existing opioid epidemic is certainly prejudicial to defendant. This is particularly true given that he is charged with distributing opioids. A generalized social awareness of the dangers of consuming opioids combined with evidence of defendant's distribution of those same opioids is likely to mislead and confuse the jury. Considering the minimal relevance of the existence of the opioid epidemic to defendant's charged crimes, the Court concludes that such evidence is inadmissible under Rule 403; at least to the extent the Government might imply a specific connection between Bynes and the epidemic.[1]

To the extent that the opioid epidemic amounts to no more than relevant factual context for otherwise relevant documents or is, in the opinion of medical experts, relevant to the applicable standard of care, however, the Court cannot prevent the Government from mentioning it at all. Other courts have permitted limited reference to "epidemics,"

---

[1] As to defendant's second question, however, instructing the jury is the purview of the District Judge. The parties have filed their proposed jury instructions, which the District Judge will address at the appropriate time. *See* docs. 127 (Defendant's Request to Charge) & 130 (Government's Request to Charge). The request to charge incorporated in the motion *in limine* is, therefore, **DISMISSED AS MOOT**. The Court notes, additionally, that defendant's proposed jury instructions do not include any discussion of the opioid crisis or epidemic. Even assuming that a jury instruction were properly requested in a motion *in limine*, then, it appears that defendant has withdrawn any such request.

where relevant to criminal cases, but with an "admonition that there would be no undue focus on the so-called . . . epidemic." *United States v. Feldman*, 2016 WL 3002418, at \* 5 (M.D. Fla. May 20, 2016) (finding that reference to an "epidemic of prescription drug abuse . . . was certainly relevant to put this case in its proper perspective."); *see also United States v. Minas*, 697 F. App'x 531, 532 (9th Cir. 2017) (finding that expert testimony about a policy "adopted . . . in part because of concerns over Idaho's opioid epidemic" was properly admitted).

In the necessarily abstract context of a motion *in limine*, the Court simply cannot anticipate and evaluate every possible reference to the "opioid epidemic." The parties' respective briefs have identified some indisputably impermissible references and some, at least arguably, permissible ones. The Court will, therefore, **GRANT** the motion, **in part**. Doc. 123. The Government will not elicit testimony or present argument implicating defendant in the "opioid crisis" or "opioid epidemic." It will, however, **DENY** the motion, **in part**, and permit the Government to elicit testimony or present argument that refers to the crisis or epidemic as relevant context for otherwise admissible evidence (*e.g.,* in establishing or informing the applicable standard of care). The

Government should avoid any unnecessary reference to or undue focus upon the "crisis" or "epidemic." As the parties prepare for trial, they are encouraged to anticipate and, if possible, resolve any references that approach the line between the permissible and impermissible.

## II.    Defendant's Second Motion *in Limine*

Defendant's second motion incorporates several distinct subparts. He first requests that the Court preclude law enforcement witnesses from offering improper opinions about case-related medical matters, including medical findings or the legitimacy of pain treatment because the government failed to provide sufficient notice pursuant to Fed. R. Crim P. 16(a)(1)(G). Doc. 124 at 1. He also requests an order excluding evidence regarding the amount of controlled substances he prescribed compared to other physicians because such evidence is inadmissible hearsay and unfairly prejudicial and misleading in violation of Fed. R. Evid. 802 and 403. *Id.* Finally, he requests that the Court preclude the government from offering evidence of the reputation of defendant or the clinics at which he works because it constitutes improper character evidence and is unfairly prejudicial in violation of Fed. R. Evid. 404 and 403. The Court will address each part of the motion in turn.

## A. Expert Testimony

Federal Rule of Criminal Procedure 16(A)(1)(G) states that

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

As an initial matter, while the Government did request reciprocal discovery, there is no indication on the record that defendant requested a written summary of any evidence the Government intended to use under Rules 702, 703, or 705. However, to the extent that defendant now seeks to invoke Fed. R. Crim. Pro. 16, the Court will **CONSTRUE** the motion as a request. **If the Government seeks to introduce expert testimony it must comply with Rule 16 no later than September 27, 2019.**

Despite the absence of any request, defendant's brief seeks a ruling on the admissibility of any expert testimony. Indeed, defendant

specifically requests that the Court "preclude the government from offering 'opinions' from its law enforcement witnesses that are based less on their expertise in generalized areas of narcotics trafficking and more on their specific, case-related knowledge based on interviews with witnesses and other hearsay-based information." Doc. 124-1 at 2.

Defendant cites two cases; *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003), and *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). Both cases from outside this circuit address the potential dangers of government fact witnesses testifying in expert capacities, particularly because these witnesses may be given unmerited credibility for testimony. *Dukagini*, 326 F.3d at 53. The Second Circuit expressed concern that such testimony may stray outside the realm of expert testimony and be based on facts and hearsay gleaned during investigation. *Id.* at 54-55. However, *Dukagini*, in particular relied on the standard set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) as well as an in-depth analysis of the testimony to determine whether the proffered case agent's testimony was appropriate. *Id.* at 54.

The Court lacks the ability to conduct either the analysis required by *Daubert* or an analysis under the Second Circuit's standard as there is currently no testimony to analyze. Moreover, the Eleventh Circuit Court of Appeals has not always determined that *Dukagjini* is the appropriate standard to apply. *See United States v. Steed*, 548 F.3d 961 (11th Cir. 2008) (where expert testimony was based "only on the expert's professional knowledge and ability, . . . *Dukagjini* was not on point"). Although that court has acknowledged "particular difficulties, warranting vigilance by the trial court, arise when an expert, who is also the case agent, goes beyond interpreting code words and summarizes his beliefs about the defendant's conduct based on his knowledge of the case." *United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009). It is doubtful, therefore, that defendant's motion could be successful on the current record.

Finally, the Government disclaims any intent "to have any law enforcement witness offer opinions as to medical findings or the legitimacy of pain." Doc. 133 at 4. Accordingly, this portion of defendant's motion is **DENIED as moot**. Doc. 124. The Court

**DEFERS** ruling on the admissibility of any particular testimony until the dispute is sufficiently developed to permit the proper analysis.

B. Comparing the Amount of Controlled Substances

Defendant next requests that the Court prohibit testimony regarding the amount of controlled substances he prescribed as compared to other physicians. Doc. 124-1 at 3. He argues that such evidence is inadmissible pursuant to Fed. R. Evid. 802, as it is inadmissible hearsay. *Id.* Barring that, defendant argues that the volume of prescriptions has little probative value, is inherently misleading, and would give rise to unfair prejudice. *Id.*

The Government responds by identifying three types of evidence potentially implicated by defendant's motion: (1) testimony by physicians who treated some of Dr. Bynes' patients and "will testify about their . . . interactions . . ., including their diagnoses, evaluation, and treatment," which "will focus on their own treatment of their own patients"; (2) summaries of data obtained from Medicare and pharmacies concerning the practice of "other medical professionals"; and (3) "evidence inextricably intertwined with the charges of the indictment, as explained in the Government's Notice (ECF No. 80) and

Motion in Limine (ECF No. 126)." Doc. 133 at 5-6. The Government argues that any testamentary evidence encompassed by those categories would be limited to witness's first-hand knowledge, and thus not hearsay. Any documentary evidence would be admissible under the business records exception to the Hearsay Rule. *See* Fed. R. Evid. 803(6).

The Government responds to defendant's argument that the probative value of the evidence is outweighed by the risk of prejudice by pointing out that Dr. Bynes has indicated that his defense will focus on whether the prescriptions at issue transgressed the scope of professional discretion. *See* doc. 133 at 6. In support of the admissibility of the evidence it seeks to admit on that aspect of the case, the Government points to the Eleventh Circuit's sanction of the admission of similar comparative evidence in *United States v. Merrill*, 513 F.3d 1293 (11th Cir. 2008). *See* doc. 133 at 6-7.

Generally, under Fed. R. Evid. 802, "hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." However, the same rules also allow hearsay to be introduced in a variety of

circumstances. *See, e.g.,* Fed. R. Evid. 803 (allowing introduction of hearsay which constitutes present sense impression, excited utterance, then-existing mental condition, statement made for medical diagnosis or treatment, recorded recollection, records of a regularly conducted activity, etc.) Thus, the Court will not exclude a substantive category of evidence without allowing the Government the opportunity to establish its admissibility under an exception to the hearsay rule.

The Court nevertheless recognizes that the category of testimony identified by defendant is broadly prejudicial particularly and its relevance is tenuous at best. However, this circuit has allowed testimony of "an unusually high number of prescriptions." *See United States v. Weiler*, 652 F. App'x 913, 918 (11th Cir. 2016) (no abuse of discretion in admitting testimony that pharmacy had "processed an unusually high number of prescriptions written by Dr. Heromin for out-of-state patients"). Thus, while the Court is skeptical of direct comparisons between particular physicians, (i.e., Dr. X prescribes a certain amount and Dr. Y prescribes a certain amount), there does not appear to be any bar to admitting broad generalizations (i.e., Dr. X prescribes more than a typical, similarly situated, doctor). Finally, the

Eleventh Circuit's opinion in *Merrill* establishes that where the charge at issue requires proof that a physician prescribed excessive and inappropriate quantities of controlled substances, the Government must be allowed to "present[ ] evidence on the quantities and combinations themselves and then comparing those quantities and combinations to a relevant norm to show that they were excessive and inappropriate." *Merrill*, 513 F.3d at 1302. Accordingly, the Court **DENIES** this portion of defendant's motion, as to the amount of prescriptions.

C. Defendant and his Clinic's Reputation

Finally, defendant argues that the Government should be precluded from offering testimony regarding his character, and also requests that the Court preclude the Government from referring to his clinics as "pill mill[s]." Doc. 124-1 at 6. He thus contends that "[a]ny pejorative terms suggesting the running of a 'pill mill,' being a 'drug kingpin,' or any other pejorative terms have no place in evidence at this trial." *Id.*

Other courts in this circuit have regularly allowed and—in turn—used some of the terms defendant seeks to preclude. *See, e.g., United States v. Azmat*, 805 F.3d 1018, 1035 (11th Cir. 2015) (detailing

testimony regarding pill mills); *United States v. Couch*, 2017 WL 3326665, at *9 (S.D. Ala. Aug. 3, 2017) ("Courts have commonly used the term 'pill mill' and found that it is not overly prejudicial and does not violate Rule 403."). Given the currency of those terms, the Court will not preemptively preclude their use.

As to the introduction of any improper character evidence, Fed. R. Evid. 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, evidence of prior bad acts is admissible when showing "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Here, the same problem arises as in defendant's motion *in limine* regarding expert testimony. The Court cannot anticipate what testimony the Government will proffer that might fall within Rule 404's ambit. In the absence of specifically identified testimony, the Court is unable to determine whether it is excludable or not. As a result, the Court **DENIES** this portion of the motion *in limine*, as to the character evidence. Defendant may, of course, raise the issue again at trial.

In summary, defendant's second motion *in lmine* is **DENIED** for the reasons explained above. Doc. 124. To the extent he seeks to prevent law enforcement witnesses from offering expert testimony, his motion is **DENIED as moot**. To the extent that it seeks to exclude evidence comparing the volume of controlled substances defendant prescribed to other physicians, his motion is **DENIED**. Finally, to the extent that he seeks to preclude any use of the identified "pejorative" terms, his motion is **DENIED**. Any challenge to specific testimony or evidence is **DEFERRED** to the District Judge at trial.

### III.  Government's Motion *in Limine*

The Government in turn requests that the Court admit evidence of uncharged prescriptions and related information, exclude any evidence which should have been turned over to the Government under defendant's reciprocal obligations, and exclude any evidence or argument regarding the source of law applicable to the prescription of controlled substances. Doc. 125. The District Judge's Criminal Trial Management Order directed that "any responses to any motions in limine [be filed] on or before 9/23/2019." Doc. 102 at 2. Since Bynes filed no response to the Government's motion *in limine*, it stands

unopposed. *See* S.D. Ga. L. Crim. R. 1.1 (incorporating the Local Civil Rules "as to matters of procedure and administration not addressed by these supplemental rules."); S.D. Ga. L. Civ. R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion.").

A. Uncharged Prescriptions

The Government argues that it is entitled to introduce evidence at trial beyond the specific prescriptions listed in Counts 1 through 17 of the superseding indictment. Doc. 125 at 2. The Government cites to *United States v. Merrill*, 513 F.3d 1293, 1303 (11th Cir. 2008) for the proposition that "a jury may consider prescription data sets outside those specifically charged in the indictment to determine whether a physician has exceeded the legitimate bounds of medical practice." Doc. 125 at 2-3. Likewise, *Merrill* allows the introduction of such evidence "were relevant to prove that [defendant] prescribed 'excessive and inappropriate quantities and combinations of controlled substances' and that in doing so he acted 'outside the usual course of professional practice.'" *Id.* at 1302 (citations omitted). This Court has likewise allowed the introduction of prescription data sets outside those

specifically charged. *United States v. Hung Thien Ly*, 2008 WL 11343666 (S.D. Ga. June 25, 2008). As in that case, here a necessary element of the crime charged is whether defendant wrote prescriptions for a legitimate medical purpose. Evidence of prescriptions not charged in the indictment is therefore admissible to show defendant's plan, design, or scheme. *Id.* at *1. Although the exact type of prescription is unknown, if they are similar in kind and close in time to the crime charged they are unlikely to result in unfair prejudice. *Id.*

The Government's motion is, therefore, **GRANTED** to the extent that it seeks permission to proffer evidence "to show that Defendant has exceeded the bounds of legitimate medical practice and as evidence of intent, knowledge, absence of mistake, and plan, design, or scheme." Doc. 125 at 4.

B. Defendant's Reciprocal Obligations

The Government requested reciprocal discovery on August 20, 2018. Doc. 47. On September 2, 2018, Defendant responded that he had no discovery to produce. Doc. 48. Consistent with that response, the government represents that he has not provided any discovery as of the date of its motion *in limine*. Doc. 125 at 4. Failure to comply with a

discovery obligation may result in the exclusion of undisclosed evidence. Fed. Crim. P. 16(d)(2). Such sanctions have been upheld from time to time. *United States v. Dickerson*, 229 F. App'x 854 (11th Cir. 2007) (defendant's failure to provide reciprocal discovery warranted exclusion of documents defendant sought to introduce into evidence at trial).

**Accordingly, defendant is DIRECTED to produce his reciprocal discovery to the Government, if any, no later than 3:00 p.m. on Friday September 27, 2019.** This disclosure shall include (1) documentary evidence (consisting of data in any form) and objects which defendant intends to use in its case-in-chief, but which was not included in the government's discovery disclosures, and (2) any witness statements (as defined in Fed. R. Crim. P. 26.2(f)) that relate to the subject matter of any defense witness' testimony. The Government's motion is **GRANTED**. Any discoverable material not produced by the deadline above is excluded.

C. Source of Law

Finally, the Government seeks to preclude defendant's discussing in argument or soliciting testimony, either on direct- or cross-examination, that federal regulations applicable to the prescription of

controlled substances "do not create binding legal standards, or carry less weight than statutes passed by Congress." Doc. 125 at 5. Given the limited detail of the Government's motion and Bynes' lack of opposition, it is not entirely clear what the Government seeks to preclude. To the extent that defendant's argument or solicitation of testimony would amount to encouraging jury nullification, it is well-established that "while jurors may choose to flex their muscles, ignoring both law and evidence in a gadarene rush to acquit a criminal defendant, neither the court nor counsel should encourage jurors to exercise this power. [Cit.] A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification . . ." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (citations omitted); *see also United States v. Fuches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("Because the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence."). The Government's motion is, therefore, **GRANTED**. Defense counsel

shall neither argue nor solicit testimony that suggests the laws or regulations applicable in this case are defective.

In summary, because the Government's requests in its Motion *in limine* are both substantively justified, as explained above, and unopposed, the motion is **GRANTED**. Doc. 125.

## CONCLUSION

For the foregoing reasons, defendant's first motion is **GRANTED, in part**, and **DENIED, in part**, doc. 123, his second motion is **DENIED**, doc. 124, and the Government's motion is **GRANTED**, doc. 125.

**SO ORDERED,** this <u>26th</u> day of September, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA